UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Cleo B. Neary</u>
<u>and Stephen Neary</u>

     v.                          Civil No. 07-cv-273
                               Opinion No. 2008 DNH 043
<u>Miltronics Manufacturing</u>
<u>Services, Inc., Anton Neary,</u>
<u>Elisabeth Neary and Matthew Neary</u>

# <u>O R D E R</u>

The plaintiffs, minority shareholders in defendant

Miltronics Manufacturing Services, Inc., a closely held

corporation, seek its judicial dissolution or, in the

alternative, an injunction against their ouster as its directors

at the hands of its majority shareholder, defendant Anton Neary.

Plaintiffs Cleo B. Neary and Stephen Neary -- who are Anton's

mother and brother, respectively -- also seek an accounting of

payments the corporation has made for Anton's benefit, together

with damages equal to those sums.  The plaintiffs claim that, in

retaliation for their complaints over Anton's alleged

mismanagement of the company, he has engaged in a "freeze out"

scheme by removing them from its board of directors and reducing

their compensation as its employees, intending to appropriate its

assets for his own benefit.

The defendants, including Anton and his wife and son -- who

also sit on the Miltronics board -- have moved to dismiss this

action for lack of subject-matter jurisdiction.  In the

alternative, they ask this court to abstain from exercising jurisdiction as to the plaintiffs' claims for equitable relief under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), which endorses abstention "to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." <u>Pub. Serv. Co. of N.H. v. Patch</u>, 167 F.3d 15, 24 (1st Cir. 1998) (citing <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 361-64 (1989)).  The court heard oral argument on the motion on February 20, 2008.

For the reasons explained below, the motion is granted in part.  This court abstains from adjudicating the plaintiffs' equitable claims, which are dismissed without prejudice.  The remaining claims for damages are stayed until the equitable claims are resolved in state court.

### Applicable Legal Standards

Miltronics is a Vermont corporation, though it maintains its principal place of business just over the border in Keene, New Hampshire, where Anton and his wife and son live.  Claiming domicile in Florida, Cleo and Stephen commenced this action against Miltronics and the other defendants in this court, invoking its diversity jurisdiction.  <u>See</u> 28 U.S.C. § 1332(a)(1). They therefore bear the burden to show that subject-matter jurisdiction exists.  <u>See</u>, <u>e.g.</u>, <u>Johansen v. United States</u>, 506

F.3d 65, 68 (1st Cir. 2007).  As the parties seeking <u>Burford</u>
abstention, however, the defendants bear the burden of showing
that it is the appropriate course.  <u>See</u> <u>Grode v. Mut. Fire,</u>
<u>Marine & Inland Ins. Co.</u>, 8 F.3d 953, 960 (3d Cir. 1993).

## Analysis

Like all states, <u>see</u> 16A <u>Fletcher Cyclopedia of Corporations</u>
§ 8034, at 84 (rev. ed. 2003), Vermont provides a statutory
procedure for the judicial dissolution of corporations formed
under its law.  <u>See</u> Vt. Stat. Ann. tit. 11A, § 14.30.  The
statute makes this relief available on a number of grounds,
including those invoked by the plaintiffs here: (1) that "the
directors or those in control of the corporation have acted, are
acting, or will act in a manner that is illegal, oppressive, or
fraudulent," and (2) that "the corporate assets are being
misapplied or wasted."  <u>Id.</u> §§ 14.30(B), (D).  If such grounds
exist, the court may enter a decree dissolving the corporation,
then proceed to "direct the winding up and liquidation of the
corporation's business affairs" in the manner provided by the
statute.  <u>Id.</u> § 14.33.  "In the course of such proceedings the
rights of creditors and stockholders are afforded special
protection by way of notice, time for presentation of claims and
opportunity for hearing as the court may direct."  <u>Hall v.</u>
<u>Pilgrim Plywood Corp.</u>, 227 A.2d 285, 288 (Vt. 1967) (discussing

prior version of statute); <u>see also</u> Vt. Stat. Ann. tit. 11A, §§ 14.06-14.09.

The statute further empowers the court to issue injunctions, appoint a receiver or custodian, or take other action to preserve the corporation's assets until the petition for dissolution can be heard.  Vt. Stat. Ann. tit. 11A, § 14.31(c).  Venue over dissolution proceedings, when they are commenced by shareholders, "lies in the county where the corporation's principal office (or, if none in this state, its registered office) is or was last located."  <u>Id.</u> § 14.31(a).

Based on the existence of similar state-law procedures, "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction existed." <u>Friedman v. Revenue Mgmt. of N.Y., Inc.</u>, 38 F.3d 668, 671 (2d Cir. 1994); <u>see also</u>, <u>e.g.</u>, <u>Caudill v. Eubanks Farms, Inc.</u>, 301 F.3d 658, 665 (6th Cir. 2002); <u>Ives v. Advanced Broadband Solutions, Inc.</u>, No. 2003-0848, 2004 WL 180043, at *5 (D. Md. Jan. 23, 2004); <u>Kimmel v. Wirtz</u>, No. 91-117, 1991 WL 277632, at *6 (N.D. Ill. Dec. 19, 1991); <u>In re English Seafood (USA), Inc.</u>, 743 F. Supp. 281, 289 (D. Del. 1990); <u>Codos v. Nat'l Diagnostic Corp.</u>, 711 F. Supp. 75, 78 (E.D.N.Y. 1989); <u>Alkire v. Interstate Theatres Corp.</u>, 379 F.

4

Supp. 1210, 1215 (D. Mass. 1974).[1]  These courts have generally
concluded that "federal courts should abstain from interfering
with the development and administration of the complex statutory
schemes that states have devised to regulate corporations created
under their laws." English Seafood, 743 F. Supp. at 288 (citing
Alkire, 379 F. Supp. at 1215); see also, e.g., Caudill, 301 F.3d
at 655; Friedman, 38 F.3d at 671; 16A Fletcher Cyclopedia of
Corporations § 8099, at 174 (rev. ed. 2003).

Many of these courts have relied on Burford in support of
this conclusion, see, e.g., Caudill, 301 F.3d at 660-65,
Friedman, 38 F.3d at 671; Ives, 2004 WL 180043, at *3-*5, while
others have not, at least explicitly, see, e.g., English Seafood,
743 F. Supp. at 288-89; Alkire, 379 F. Supp. at 1215.  It is
perhaps open to question whether state corporation statutes in
general, and their judicial dissolution procedures in particular,
truly represent the kind of "'administrative processes for the
determination of complex, policy-laden, state-law issues'"
usually deemed essential to Burford abstention.    Sevigny v.

---

[1]Because this court concludes, like a number of these other
courts have, that it should abstain from exercising jurisdiction
over the plaintiffs' claims for dissolution and other equitable
relief, it need not decide whether it has subject-matter
jurisdiction over those claims in the first instance.  Federal
courts are free "to choose among threshold grounds for denying
audience to a case on the merits." Ruhrgas AG v. Marathon Oil
Co., 526 U.S. 574, 585 (1999); see also Spargo v. N.Y. State
Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003)
(deciding to abstain from exercising jurisdiction without
reaching question of whether it existed).

Employers Ins. of Wasau, 411 F.3d 24, 29 (1st Cir. 2005) (quoting

Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993)).  But the

court need not resolve that question here because, even if the

circumstances of this case do not support Burford abstention,

they nevertheless support abstention on other grounds.

     "[A]bstention doctrines are not a closed-end collection of

exceptions" to the exercise of the subject-matter jurisdiction

conferred upon the federal courts by Congress.  Id. at 30.  One

such exception, reflected in the uniform case law just cited, is

that federal courts abstain from hearing claims for the

dissolution of state corporations.  In a case decided prior to

Burford, in fact, the Supreme Court held that a federal district

court should not have maintained a receivership over a failed

Pennsylvania bank in the face of that state's "complete,

comprehensive and economical scheme for liquidation by the

[state] Secretary of Banking of such a [bank]."  Pennsylvania v.

Williams, 294 U.S. 176, 179 (1935).  The Court held that, under

these circumstances, the district court should have declined to

exercise jurisdiction, observing that "[i]t has long been

accepted practice for the federal courts to relinquish their

jurisdiction in favor of the state courts, where its exercise

would involve control of or interference with the internal

affairs of a domestic corporation of the state."  Id. at 185.

Williams provides a compelling -- and controlling -- reason,
independent of the Burford doctrine, for federal courts to
abstain from hearing claims for dissolution and analogous relief
against state corporations.  Indeed, courts have recognized
additional concerns, not necessarily tied to those supporting
Burford abstention, for declining to exercise jurisdiction over
dissolution suits.  These concerns include "the possibility of
federal dissolution actions . . . being commenced in a number of
different districts in which a particular [state] corporation was
subject to service, thereby placing an onerous burden on the
corporation," as well as the more formal notion that

> [c]orporations are creatures of the Legislature.  It is
> from this body that they derive their life, as well as
> the terms and conditions of their existence.  It is
> appropriate, therefore, that the terms and conditions
> of their existence be determined by that body.

Alkire, 379 F. Supp. at 1214-15; see also English Seafood, 743 F.
Supp. 288-89; Codos, 711 F. Supp. at 78.  Thus, regardless of
whether the plaintiffs' equitable claims here meet the stringent
requirements for Burford abstention, see generally Fragoso, 991
F.2d at 882-86, abstention is nevertheless appropriate to avoid
infringing on Vermont's important interests in overseeing the
continued existence of corporations created under its laws.  See
Harrison v. CBCH Realty, Inc., No. 92-434, 1992 WL 205839, at *3
(N.D.N.Y. Aug. 13, 1992) (abstaining from exercising jurisdiction
over action to dissolve corporations while acknowledging that

"this case does not fall within any of the accepted abstention doctrine categories," including <u>Burford</u>).

These interests are implicated not only by the plaintiffs' request to dissolve Miltronics, but also by their claims for an accounting and an injunction against their removal from its board.  After all, the Supreme Court in <u>Williams</u> cautioned against the exercise of federal jurisdiction whenever "it would involve control of or interference with the internal affairs of a domestic corporation of the state."  294 U.S. at 185.  Few actions would exert greater "control of or interference with" Miltronics's internal affairs than forcing the production of its corporate records or dictating the composition of its board of directors.  This court will therefore abstain from hearing not only plaintiffs' dissolution claims, but their other claims for equitable relief as well.  <u>See</u> <u>Feiwus v. Genpar, Inc.</u>, 43 F. Supp. 2d 289, 299 (E.D.N.Y. 1999) (abstaining from hearing requests to dissolve corporation, appoint receiver, compel buy-out of minority shareholder, compel accounting, and void results of shareholders' meetings); <u>Ives</u>, 2004 WL 180043, at *5 (abstaining from hearing claims for dissolution and accounting).

As the defendants acknowledge, this reasoning does not extend to plaintiffs' claims for damages based on Anton's allegedly directing the corporation to make payments for his benefit.  The Supreme Court has instructed that, under its

precedents, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996).  But in "damages actions," the Court has "only permitted a federal court to withhold action until the state proceedings have concluded; that is, . . . to enter a stay."  Id. at 730 (internal quotation marks and citation omitted).  This distinction reflects the origin of abstention principles in "the discretion historically enjoyed by courts of equity," as opposed to courts at law.  Id. at 729 (internal quotation marks omitted).

Thus, the proper course in an action that presents claims for both equitable relief and damages is to dismiss the former and stay the latter, pending adjudication of the equitable claims at the state level (assuming, of course, that abstention is otherwise appropriate).  See id. at 719.  This was the tack taken by the court in Feiwus, which dismissed the plaintiff's claims for dissolution, an accounting, and other equitable remedies against a corporation, but stayed his damages claims, pending resolution of the equitable claims in state court.  43 F. Supp. 2d at 301.

The plaintiffs argue that, because this court must likewise stay, rather than dismiss, their claim for damages, "reasons of fairness and judicial economy" counsel in favor of also

9

exercising jurisdiction over their equitable claims, which "all involve the same conduct and courses of action."  This argument, however, proves too much.  If the specter of having to litigate issues common to legal and equitable claims at both the state and federal level were reason enough for a federal court to hear the equitable claims notwithstanding abstention principles, then the "abstain and stay" approach expressly endorsed by the Supreme Court would be available only in theory, because nearly all actions joining legal and equitable claims will involve some commonality.  As its Quackenbush decision suggests, the Court simply gives the "principles of federalism and comity" animating its abstention doctrines more weight than concerns of fairness and judicial economy that might ordinarily counsel against re-litigation of the same issues in different courts.[2]  517 U.S. at 728 (internal quotation marks omitted).  To honor the important principles of federalism and comity underlying the federal judiciary's traditional refusal to meddle in affairs of corporate

---

[2]To the extent that Quackenbush reflects any concern with the potentially duplicative effort of returning to federal court to try claims for damages following the resolution of intertwined equitable claims in state court, it suggests that such concerns can be addressed "in certain narrow circumstances, under the common-law doctrine of forum non conveniens," by dismissing the entire action in favor of state court adjudication.  517 U.S. at 721-22.  But the plaintiffs do not suggest that this course is appropriate here -- indeed, they argue for the opposite approach, that the entire case should remain in this court -- so this court need not consider the application of the forum non conveniens doctrine in this context.

governance, this court must abstain from hearing the plaintiffs'
equitable claims, even if that means they must return here to
litigate their claims for damages after resolving their equitable
claims in state court.[3]  See Feiwus, 43 F. Supp. 2d at 302
(abstaining from jurisdiction over equitable claims against
corporation despite intertwined claims for damages).

    The plaintiffs also allege that "Miltronics is truly a
Vermont corporation in name only," with its offices and the
majority of its employees, customers, and creditors located in
New Hampshire.  As the plaintiffs explained at oral argument, a
Vermont state court hearing their equitable claims will therefore
lack the power to subpoena a number of potential witnesses, and
the corporation's creditors and other interested parties will
have to travel out-of-state to attend the dissolution
proceedings.  Abstention doctrines, however, have developed not
out of a concern for the convenience of the parties and
witnesses, but out of a respect, inherent in the federalist
system, for state prerogatives in certain areas of governance.
See Quackenbush, 517 U.S. 716-17.  As just explained, the former
must give way to the latter when they conflict.  Id. at 728.
This court's decision to abstain from hearing the plaintiff's

---

    [3]The plaintiffs, of course, can avoid these duplicative
efforts by voluntarily dismissing their damages claims in this
court without prejudice so they may refile them in state court
along with their equitable claims.

equitable claims, then, does not reflect a judgment that they should be heard in a Vermont court instead of a New Hampshire court, but that they should not be heard in a federal court, whether in New Hampshire or elsewhere.[4]  In fact, the decision would be the same even if Miltronics actually were a New Hampshire corporation incorporated under New Hampshire law.

Finally, the inconvenience to witnesses in traveling to Vermont from New Hampshire (or the similar inconvenience to the parties and their counsel in compelling witnesses to make the trip) is minimal, given the close proximity of the two states.[5] Even if the practical difficulties resulting from abstention could justify eschewing that course in a particular case, then, this would not appear to be the one.

### Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 7) is GRANTED insofar as it requests that this court abstain from hearing the plaintiffs' claims for equitable relief (counts 1, 2, and 5), which are dismissed without prejudice.  The plaintiffs' claims for damages (counts 3 and 4)

_____

[4]Indeed, this court expresses no opinion on where the plaintiffs should re-file their equitable claims.

[5]New Hampshire and Vermont "lie like wedges,/Thick end to thin end and thin end to thick end,/And are a figure of the way the strong of mind and strong of arm should fit together . . . ." Robert Frost, "New Hampshire," in Collected Poems, Prose and Plays 155-56 (Richard Poirier & Mark Richardson, eds., 1995).

are stayed pending the final adjudication of their equitable claims in state court.  The clerk shall administratively close the case during the stay.

     **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

February 22, 2008

cc:  Michael C. Harvell, Esq.
     Zara K. Morgan, Esq.
     Potter Stewart, Jr., Esq.